UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | PLAINTIFF |
| | ) | |
| v. | ) | No. 4:18CR00163-01 JM |
| | ) | |
| | ) | |
| ALEXANDER JOSEPH JORDAN | ) | DEFENDANT |

**MOTION TO DISMISS**
**FOR FAILURE TO CHARGE A CRIME**
**AND LACK OF FEDERAL JURISDICTION**

The Defendant, Alexander Jordan, by and through his attorney, Nicole
Lybrand, moves this Court to dismiss the indictment in this action for its failure to
charge a crime under Title 18 U.S.C. § 175b(c) and 42 C.F.R. § 73.3. There is no
federal jurisdiction since the unregistered possession of ricin is not a federal crime.
In the unlikely event that the Court construes the statute as applying to the
unregistered possession of ricin, this case must still be dismissed, as the statute is
void for vagueness. To the extent the Court may determine ambiguity exists in
what 18 U.S.C. § 175b criminalizes, the Rule of Lenity also requires dismissal of
Mr. Jordan's charges.

In support of this motion, Mr. Jordan states:

1

1. Mr. Jordan is charged in a one count indictment, which alleges:

> On or about, February 22, 2018, in the Eastern District of Arkansas, the defendant, Alexander Joseph Jordan, did knowingly possess a select agent, namely ricin, without obtaining a registration required by regulations under Section 351A(c) of the Public Health Service Act, in violation of Title 18, United States Code, Section 175b(c) and 42 CFR § 73.3.

2. A violation of 18 U.S.C. § 175b(c) allows for the prosecution for unregistered possession of a "select agent" under § 175b(c)(1) or "certain other biological agents and toxins" under § 175b(c)(2). The indictment does not specify which subsection of § 175b, but its use of the term, "select agent" makes clear the government's intention to charge a violation of 18 U.S.C. § 175b(c)(1). This subsection provides:

(c) Unregistered for possession. --

(1) Select Agents.--Whoever knowingly possesses a biological agent or toxin where such agent or toxin is a select agent for which such person has not obtained a registration required by regulations under section 351A(c) of the Public Health Service Act shall be fined under this title, or imprisoned for not more than 5 years, or both.

3. For this case's purposes, the term "select agent" is statutorily defined in 18 U.S.C. § 175b(d), which provides:

(d) In this section:

(1) The term "select agent" means a biological agent or toxin to which subsection (a) applies. Such term (including for purposes of subsection (a)) does not include any such biological agent or toxin that is in its naturally-occurring environment, if the biological agent or toxin has not been cultivated, collected, or otherwise extracted from its natural source

4. For the purposes of 18 U.S.C. § 175b, Subsection (a)(1) provides:

(a)(1) No restricted person shall ship or transport in or affecting interstate or foreign commerce, or possess in or affecting interstate or foreign commerce, any biological agent or toxin, or receive any biological agent or toxin that has been shipped or transported in interstate or foreign commerce, if the biological agent or toxin is listed as a non-overlap or overlap select biological agent or toxin in sections 73.4 and 73.5 of title 42, Code of Federal Regulations, pursuant to section 351A of the Public Health Service Act, and is not excluded under sections 73.4 and 73.5 or exempted under section 73.6 of title 42, Code of Federal Regulations.

Evident in the plain language of Subsection (a), 18 U.S.C. § 175b limits its application to a biological agent or toxin that "is listed" in 42 CFR §§ 73.4 and 73.5.[1]

5.  42 C.F.R. § 73.4 lists the following "overlap"[2] select agents and toxins:

> Bacillus anthracis;
> Bacillus anthracis (Pasteur strain);
> Brucella abortus;
> Brucella melitensis;
> Brucella suis;
> Burkholderia mallei;
> Burkholderia pseudomallei;
> Hendra virus;
> Nipah virus;
> Rift Valley fever virus; and
> Venezuelan equine encephalitis virus

None of these items are toxins, like ricin; rather, they are bacterial or viral agents. 42 C.F.R. § 73.5 does not list any select agents. Since ricin is not listed in sections 73.4 or 73.5, it is not a "select agent" under 18 U.S.C. § 175b(c).

6.  42 CFR § 73.3 lists out 37 "HHS select agents and toxins, which includes Ricin and many other toxins. It is much longer than the list contained in § 73.4. §

---

[1] This version of 18 U.S.C. § 175b has not been modified since December 17, 2004. See, Pub.L. 108-458, Title VI, § 6802(c), (d)(1), Dec. 17, 2004, 119 Stat. 3767.

[2] Select agents and toxins subject to regulation by both HHS under 42 CFR 73 and USDA under 9 CFR 121 and 7 CFR 331 are labeled "overlap select agents and toxins." Select agents and toxins that are solely regulated by HHS are labeled "non-overlap agents." This overlap formed because some toxins fall within HHS's scope of protecting public health and USDA's scope of protecting animal and plant health.

73.3 is not listed in 18 U.S.C. § 175b(a) as a list of select agents and toxins to which the criminal statute prohibiting the unregistered possession of select agents and toxins attaches to.

7.   The indictment fails to state a federal crime because ricin is not a "select agent" to which § 175b(c) attaches because ricin is not a biological agent or toxin that "is listed" in 42 CFR §§ 73.4 and 73.5. In other words, the scope of 18 U.S.C. § 175b does not extend to 42 CFR § 73.3, because this section is not listed in § 175b(a). Since the indictment fails to allege a federal crime, incorrectly conflating 18 U.S.C. § 175b(c) and 42 CFR § 73.3, this Court lacks federal jurisdiction over this case and it must be dismissed.

8.   Any construction by the Court that Congress meant for the statute to apply to the unregistered possession of ricin is void for vagueness as applied to this case. Injecting such congressional intent would produce great ambiguity, moving against critical canons of statutory interpretation. However, with this ambiguity the Rule of Lenity would still apply to necessitate the dismissal of the indictment against Mr. Jordan.

## ARGUMENT

**I.    The canons of statutory interpretation dictate that the Court must enforce 18 U.S.C. § 175b as not applying to the unregistered possession of ricin**

### A.  The language of 18 U.S.C. § 175b is plain, specific and unambiguous

The language of 18 U.S.C. § 175b is plain, specific, and unambiguous such that it can admit to only meaning: criminalization under the statute does not apply to the unregistered possession of ricin. A court must first look to the language of the statute itself in construing its meaning. *Randall v. Loftsgaarden*, 478 U.S. 647, 656 (1986). The court's inquiry ends immediately with enforcement if that language is unambiguous. *BedRock Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004); *see also Caminetti v. U.S.*, 242 U.S. 470 (1917) ("Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion."); *U.S. v. Vig*, 67 F.3d 443, 448 (8th Cir. 1999) (stating that "unless exceptional circumstances dictate otherwise, when the terms of a statute are unambiguous, judicial inquiry is complete"). We must "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

Here, the statutory language in 18 U.S.C. § 175b is plain and unambiguous. Section 175b(d) states, "[T]he term "select agent" *means* a biological agent or toxin to which subsection (a) applies…." The word "means" indicates that the definition of "select agent" is explicit, clear, and exclusive; it does not use "includes," which could create space for ambiguity. Similarly, section 175b(a) states, "…if the biological agent or toxin *is listed* as a non-overlap or overlap select biological agent or toxin *in sections 73.4 and 73.5* of title 42, Code of Federal Regulations…." This definition is also clear and unambiguous; it states exactly where the criminalized biological agents and toxins under § 175b(c) must be found. "When a statute includes an explicit definition, we must follow that definition…" *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000). § 175b offers two explicit definitions which guide the court's analysis. Both definitions are plain, explicit, and do not include any reference to 42 CFR § 73.3. Since the court must interpret the meaning of statutory language to be what it plainly states and end its review there if the language is unambiguous, the Court in this case must find that 18 U.S.C. § 175b(c) does not apply to the unregistered possession of ricin.

## B.  The explicit expression of 42 CFR §§ 73.4, 73.5 in 18 U.S.C. § 175b's definition of "select agent" implies the exclusion of section 73.3

The unregistered possession of ricin listed in 42 CFR § 73.3 is not criminalized by 18 U.S.C. § 175b due to its implied exclusion from the definition of "select agents" in section 175b(a). The canon of *expressio unius* dictates that by expressly including items in a group or series, a statute impliedly excludes those unmentioned.[3] *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002). For example, "[I]f a sign at the entrance to a zoo says, 'come see the elephant, lion, hippo and giraffe,' and a temporary sign is added saying, 'the giraffe is sick,' you would reasonably assume that the others are in good health. *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 940 (2017).

Here, § 175b expressly sets forth sections of 42 CFR without including 73.3 in that list. Such exclusion implies that Congress did not intend to include the biological agents and toxins listed in § 73.3 in the definition of "select agents" criminalized by § 175b.

---

[3] The Court has held that this canon does not apply "unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it" and can be defeated by "contrary indications that adopting a particular role or statute was probably not meant to signal any exclusion." *Barnhart v. Peabody Coal Col.*, 537 U.S. 149, 168 (2003); *United States v. Vonn*, 533 U.S. 55, 65 (2002).

After extensive research, defense counsel has found only one factually similar and published decision regarding a prosecution for ricin possession under § 175b, under the most up-to-date December 2004 version of the statute.[4] In that decision, *United States v. Gibbs*, the court ruled in the defendant's favor, granting a similar motion to dismiss for failure to state a federal crime.  2018 WL 1916627 9 (N.D. GA).  The *Gibbs* court reasoned that § 175b's language is clear and unambiguous and that the it could not give effect to perceived legislative intent by interpreting the language contrary to its plain meaning; rather, the responsibility falls on Congress to amend criminal laws if they result in unwanted outcomes. *Id.*

The few other cases produced by the search involving ricin possession under § 175b were mainly civil suits were the defendant filed habeas petitions or challenged restrictions on his ability to possess ricin. *See generally Poett v. U.S.*, 657 F.Supp.3d 230 (D.D.C. 2009) (where a chemist employed by the USDA filed a civil suit claiming that they improperly restricted his use of select agents and toxins); *Crooker v. Stewart*, 2014 WL 3973926 (D. Md.) (where the defendant was indicted for unregistered possession of a toxin but submitted a habeas petition arguing the prison improperly calculated his good time credits).  Instead, any criminal

---

[4] The December 2004 version added the specific CFR sections at issue here.

proceeding involving ricin possession was prosecuted under § 175. *See generally United States v. Baker*, 98 F.3d 330 (8th Cir. 1996) (where the defendant was convicted of aiding and abetting another for knowingly possessing ricin to use as a weapon under 18 U.S.C. § 175); *United States v. Le*, 902 F.3d 104 (2nd Cir. 2018) (where the defendant was convicted for attempting to acquire ricin on the "Dark Net" marketplace in order to conduct a local killing).

The exclusion of section 73.3 in § 175b's definition of "select agent," combined with the facts that the most recent and factually similar case, *United States v. Gibbs*, brought under § 175b was dismissed for failure to charge a federal crime, must persuade the court to apply the statute as not criminalizing the unregistered possession of ricin.

## C. This Court's job is to enforce 18 U.S.C. § 175b, not rewrite it

Even if the Court finds §175b to be unclear or in need of improvement, its role is not to rewrite the statute to meet its own standards, but rather merely to interpret and enforce it as Congress intended. "Courts are not authorized to rewrite a statute because they deem its effects susceptible to improvement." *TVA v. Hill*, 437 U.S. 153, 194-95 (1978). As Justice Scalia explained in *Conroy v. Aniskoff*, if "[T]he language of the statute is entirely clear, and if that is not what Congress

meant then Congress has made a mistake and Congress will have to correct it."

507 U.S. 511, 528 (1993) (concurring).

In Mr. Jordan's case, the Court must merely review the statute in order to determine how to properly enforce it. The Court's job is to apply the statutory language to this case's specific facts as Congress intended, not to rewrite that language to satisfy its own views on what the statute should criminalize. § 175b's statutory language is very clear on what it criminalizes: the unregistered possession of "select agents" listed in 42 CFR §§ 73.4 and 73.5, which does not include ricin. In accordance with Justice Scalia's approach, if Congress made a mistake by excluding § 73.3 from this list, then it is Congress's place to fix it, not this Court's.

> **D. Since 18 U.S.C. § 175b's statutory language is plain, specific and unambiguous, an analysis of congressional intent and legislative history is not required; however, such an analysis would still support an application of the statute that does not criminalize the unregistered possession of ricin**

"If unambiguous, the language of a statute is considered conclusive absent a clear, contrary legislative intent." *U.S. v. Talley*, 16 F.3d 972, 975 (8th Cir. 1994); *see e.g.*, *Caminetti v. U.S.*, 242 U.S. 470, 490 (1917) ("…when words are free from doubt they must be taken as the final expression of the legislative intent, and are

not to be added to or subtracted from by considerations drawn from titles or designating names or reports accompanying their introduction, or from any extraneous source."). It is important for the Court to apply the Eighth Circuit's policy that when "…statutes are straightforward and clear, legislative history and policy arguments are at best interesting, at worst distracting and misleading, and in neither case authoritative." *Northern States Power Co. v. United States*, 73 F.3d 764, 766 (8th Cir. 1996).

An analysis of congressional intent and legislative history is not necessary – and is at a minimum not decisive – in ruling on this Motion to Dismiss. "We ask not what Congress means; we ask only what the statute means." *U.S. v. Vig*, 67 F.3d 443, 448 (8th Cir. 1999) (citing *United States v. Hepp*, 656 F.3d 350, 353 (9th Cir. 1981)). § 175b plainly and unambiguously states that for the purposes of the statute, "select agents" are defined as those that § 175b(a) applies to, which explicitly names any biological agent or toxin listed in §§ 73.4 and 73.5. This express statement does not include section 73.3. An analysis of congressional intent and legislative history in this case is challenging and time-consuming; it will lead the court down a rabbit hole of relabeling of numbers and minor modifications, all occurring at least 15 years ago, which distracts from the statute's

clear and specific meaning. That meaning must take precedent. The statute makes clear that § 175b does not apply to the unregistered possession of ricin.

If, however, the Court elects to undertake such an analysis, it will find that there is no clearly expressed legislative intention contrary to § 175b's definition of "select agent." In 2001, Congress enacted 18 U.S.C. § 175b as part of the USA Patriot Act. Pub. L. No. 107-56, § 817, 115 Stat. 272, 385-86. It stated that unregistered persons could not possess biological agents and toxins listed by HHS to pose a potential threat to human health and safety in 42 CFR § 72.6(j). In 2002, Congress amended the statute to shift the agents and toxins it applied to from 42 CFR 72.6(j) to "Appendix A of part 72 of title 42" of CFR, which reflected the new requirements of the Public Health and Safety Act. Pub. L. 108-177, 115 Stat. 661, § 231. In 2004, Congress made its last amendment to the statute, which as part of the Intelligence Reform and Terrorism Prevention Act changed its reference from "Appendix A of part 72" to Part 73 of CFR to criminalize the possession of "non-overlap or overlap selection agents in §§ 73.4 and 73.5 of Title 42 of CFR." Pub. L. 108-458, 118 Stat. 3638, § 6802(d). Three months later, HHS re-formatted its regulations, shifting its list of select agents to section 73.3 of 42 CFR such that ricin was no longer referenced in § 175b.

Since the origin of § 175b, Congress has never stated the term 'ricin' in any version of the statute. Instead, Congress abdicated the role of identifying potentially dangerous substances to regulatory agencies. HHS was clearly aware of the numbering scheme dictated by Congress's 2004 version of 175b, which shifted the qualifying biological agents and toxins to sections 73.4 and 73.5 of 42 CFR, and still elected to re-format its own regulations to shift all biological agents and toxins listed in section 73.3 outside the statute's scope. If HHS wanted the agents listed under section 73.3, including ricin, to still be covered by the reach of § 175b, then it should not have reformatted its regulations to be inconsistent with the December 2004 version.

It is also particularly telling that Congress has had 15 years to amend § 175b to comport with HHS's reformatted regulatory scheme but has elected to take no action. Silence is powerful, and Congress has remained silent for 15 years. If Congress intended § 175b to apply to the unregistered possession of ricin, it could have easily amended the statute to include 42 CFR 73.3 in the definition of "select agent" under § 175b(a). *See Burgess v. United States*, 553 U.S. 124, 130 (2008) (reasoning that "if Congress wanted 'felon drug offense' to incorporate the definition of 'felony' in 802(13), it easily could have written 802(44) to state: 'The

term 'felony drug offense' means a felony that is punishable by imprisonment for more than one year….'"). There is a difference between assuming Congress intended for a word to mean something that it has not been found to mean and assuming Congress meant for a word to be included in a definition that it, in fact, excluded it.

Why might Congress have intended to not include the unregistered possession of ricin under § 175b? First, Congress could have concluded that the unregistered possession of ricin, on its own, is not dangerous enough of an offense to justify condoning it as a federal crime. According to the Congressional Research Service, ricin is capable of creating terror but is not an effective weapon of mass destruction, which the Acts which § 175b was adopted under were designed to address and prevent. *See* Dana Shea & Frank Gottron, <u>Ricin: Technical Background and Potential Role in Terrorism</u> 5 (2004). Ricin is difficult to spread over large groups of people and cannot be spread person-to-person; rather, it is most effective if used against one specific person. *Id.* Even a well-funded terrorist organization would find it logistically impractical to utilize ricin for mass destruction. *Id.* This information is particularly important for Mr. Jordan's case. At the time Mr. Jordan was alleged to be in possession of ricin, he was allegedly attempting to use it to

commit suicide; there has been no evidence presented showing that Mr. Jordan had any intention to harm others, nor that he possessed a large enough amount to harm another. In fact, the governments evidence alleges Mr. Jordan took threw the blender containing alleged ricin in a trash bag with the lid tightly sealed—a precaution apparently taken to prevent harm to others.

Second, Congress may just assume that § 175 sufficiently covers the illegality of possessing dangerous biological agents and toxins, like ricin, for non-peaceful purposes. Possession of ricin in order to harm another person(s) is different from mere possession of ricin. If the need for section 175b to apply to the unregistered possession of ricin was so great, the government would have prosecuted more cases since 2004. It is important to note that in these cases the defendants exclusively obtained ricin in order to harm others, which is clearly distinguishable from Mr. Jordan's case in which he only intended to harm himself. *See generally United States v. Baker*, 98 F.3d 330 (8th Cir. 1996); *United States v. Le*, 902 F.3d 104 (2nd Cir. 2018); *U.S. v. Levenderis*, 806 F.3d 390 (6th Cir. 2015); *U.S. v. Olson*, 704 F.3d 1172 (9th Cir. 2013). Similarly, the government could have also petitioned regulatory agencies to change the CFR sections to be consistent with the

statute or asked Congress to amend the statute to better reflect the HHS CFR sections. It has done neither.

Ultimately, "It is for the legislature, not the courts, to amend a statute if the plain language of the statute does not accurately reflect the legislature's intent." *In re Racing Servs., Inc.*, 779 F.3d 498, 505 (8th Cir. 2015). Congress has remained silent on this issue for 15 years and this Court must respect that silence.

## II. If the Court construes 18 U.S.C. § 175b as applying to the unregistered possession of ricin, the statute is void for vagueness

§ 175b fails to provide a person of ordinary intelligence fair notice of what is prohibited, and the statute allows for arbitrary and discriminatory enforcement. Any other reading violates due process. To ensure due process is protected, a criminal statute that "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" or "encourages arbitrary and erratic arrests and convictions" is void for vagueness. *United States v. Harris*, 347 U.S. 612, 617 (1954); *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 284, 306 (2008).

*In United States v. Faygo Beverages, Inc.*, the Sixth Circuit held that the defendant was not subject to criminal penalty based on Congress's mistake. 733 F.3d 1168 (6th Cir.). The court reasoned that it would be unreasonable to require persons to go beyond the plain language of a criminal statute in order to determine if Congress actually meant what it said. *Id.* at 1170. Similarly, in *United States v. RSR Corp.*, the Fifth Circuit held that even though Congress inadvertently changed a penalty section, the defendant was still not subject to criminal punishment. 664 F.3d 1249, 1253 (5th Cir. 1982). The court reasoned that "although this is what Congress clearly meant to say, intended to say, and wanted to say, still Congress did not say it." *Id.*

Ricin is not listed in sections 73.4 and 73.5 of 42 CFR specified in § 175b(a), so consequently, this statute does not put a person of ordinary intelligence on notice that it applies to the unregistered possession of ricin. Similarly, 42 CFR § 73.3 contains a list of select agents that HHS considers to be a potential threat to public health and safety, but does not provide any reference or connection to an attached criminal statute. A person of ordinary intelligence will not have the notice, legal understanding and patience necessary to locate and read section 73.3 in addition to the specified sections 73.4 and 73.5. A person of ordinary intelligence will most

definitely not have the legal skills necessary to research the complicated legislative history of 18 U.S.C. § 175b and regulatory history of 42 CFR's HHS list of select agents. Even if an individual did have the skills necessary, the court cannot expect a person to read beyond the plain language of the statute. *See Faygo Beverages, Inc.*, 733 F.3d at 1170.

Since Congress did not state that § 175b applies to the unregistered possession of ricin, a person of ordinary intelligence does not have the necessary notice to avoid violations of due process. *See RSR Corp.,* 664 F.3d at 1253. Ricin is not defined in § 175b as a "select agent" subject to criminal prosecution; construing the statute to apply to ricin sets a precedent for the arbitrary and discriminatory enforcement of any substance.

### III.    The Rule of Lenity requires dismissal of the charges against Mr. Jordan if any ambiguity is found in the meaning of 18 U.S.C. §175b

A statute is ambiguous if it is "capable of being understood in two or more possible senses or ways." (*United States v. E.T.H.*, 833 F.3d 931, 937 (8th Cir. 2016)). "Where Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent." *Bifulco v. U.S.*, 447 U.S. 381, 387 (1980). If a statute is ambiguous, "courts strictly construe criminal statutes against the government and *in the defendant's favor*." *Barrett v. U.S.*, 423 U.S. 212, 218

(1976)(emphasis added). It is important to note that this rule applies if, after considering the canons of statutory interpretation, the statute remains ambiguous. *U.S. v. Shabani*, 513 U.S. 10, 17 (1994).

The canon of constitutional avoidance places a duty on courts, when statutory language leads to multiple interpretations, to "shun an interpretation that raises serious constitutional doubts and instead [they] may adopt an alternative that avoids those problems."[5] *Jennings v.* Rodriguez, 138 S.CT. 830, 836 (2018); *see also United States v. Davis*, 139 S.Ct, 2319, 2331 (2019) (reasoning the Court should sometimes adopt a narrower construction of a criminal statute in order to avoid having to hold a statute unconstitutional if construed more broadly).

In *United States v. Lanier*, the government asked the court to resolve the statutory ambiguity in light of Congress's "presumptive intent to facilitate prosecutions" of unregistered possession of select agents. 520 U.S. 259, 266 (1977). In response, the Court emphasized that it interprets ambiguous criminal statutes in favor of defendants, not prosecutors. *Id.* The Court reasoned:

---

[5] This canon has also been applied by the Eighth Circuit in *U.S. v. Adler*, 590 F.3d 581, 583 (8th Cir. 2009) (holding that "when a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter").

> [T]his venerable rule not only vindicates the fundamental
> principle that no citizens should be held accountable for a
> violation of a statute whose commands are uncertain, or
> subjected to punishment that is not clearly prescribed. It also
> places the weight of inertia upon the party that can best induct
> Congress to speak more clearly and keeps courts from making
> criminal law in Congress's stead. *Id.*

There is no ambiguity in what § 175b criminalizes and this Court cannot read ambiguity into the statute or it will be effectively rewriting it. If, however, the Court finds ambiguity in what § 175b criminalizes, it must rely on the Rule of Lenity, construe the statute in the defendant's favor, and hold that it does not apply to the unregistered possession of ricin. As the Supreme Court and Eighth Circuit have emphasized, the government, not the defendant, must take on the consequences that result from its failure to draft a clear statute.

Similar to *Lanier*, where the Court denied the government's request to resolve the statute's ambiguity based on Congress's "presumptive intent," this Court should refuse to resolve any ambiguity on the side of § 175b applying to the unregistered possession of ricin merely because the statute was designed to protect human health and safety by attaching criminal consequences to possession of certain select agents. 520 U.S. at 266. In order to avoid serious due process

21

violations related to fair notice, the Court cannot presume anything about Congress's intent, especially when Congress is the entity that drafted the ambiguous statute. Rather, the Court must exercise caution in maintaining the construction of § 175b as not applying to 42 CFR § 73.3 biological agents and toxins.

WHEREFORE, the Defendant, Alexander Jordan, respectfully requests that this Court grant his Motion and for all other just and appropriate relief.

Respectfully submitted,

LISA G. PETERS
FEDERAL DEFENDER

By:    Nicole Lybrand
       Bar Number 2010215
       Assistant Federal Defender
       The Victory Building, Suite 490
       1401 West Capitol Avenue
       Little Rock, AR 72201
       (501) 324-6113
       E-mail: Nicole_Lybrand@fd.org

For:   Alexander Jordan, Defendant